**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**


**SHAIDON BLAKE,**

                **Plaintiff,**

      **v.**                             **CASE NO. 23-3186-JWL**

**(FNU) WILLIAMS, et al.,**

                **Defendants.**


**MEMORANDUM AND ORDER**
**TO SHOW CAUSE**

      Plaintiff brings this pro se civil rights action pursuant to 42 U.S.C. § 1983.  He is a Maryland state prisoner confined at the El Dorado Correctional Facility in El Dorado, Kansas, under an interstate agreement.  Plaintiff has paid the full filing fee.  The Court conducted an initial review of the case and directed Plaintiff to show cause why his Complaint should not be dismissed. (*See* Memorandum and Order to Show Cause, Doc. 8) ("MOSC").  Before the Court for screening is Plaintiff's Amended Complaint (Doc. 12) filed in response to the MOSC.  For the reasons discussed below, Plaintiff is given another opportunity to show cause why this action should not be dismissed.  Plaintiff is also given the opportunity to file a second amended complaint to cure the deficiencies.

**I.  Nature of the Matter before the Court**

      Plaintiff asserts that the defendants refused to comply with their administrative remedy procedure by failing to respond to Plaintiff's grievances and falsifying official documents (issuing

dispositions for six hearings that were allegedly never held) that negatively impacted Plaintiff's parole decision in Maryland.

Plaintiff names the following defendants: T. Williams, Warden, EDCF; Deputy Warden Bos, EDCF; Deputy Warden Howse, EDCF (now Warden at Lansing Correctional Facility); Deputy Warden Moore, EDCF; John Cannon, Regional Deputy Director of EAI; Natasha Carter, attorney for KDOC; Kansas Secretary of Corrections Zmuda; Patricia Smith, Interstate Corrections Coordinator, State of Maryland.   He asks the Court to order the Kansas Department of Corrections ("KDOC") to respond to his grievances; to correct Plaintiff's prison file; and to send a corrected report to the Maryland Parole Commission and the Maryland Department of Corrections.   He further seeks monetary damages.

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of such entity to determine whether summary dismissal is appropriate.   28 U.S.C. § 1915A(a).   Upon completion of this screening, the Court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief.   28 U.S.C. §§ 1915A(b).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."   *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992).   A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers."   *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).   In addition, the court accepts

all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The Complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at

1218 (citation omitted).  Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'"  *Smith*, 561 F.3d at 1098 (citation omitted).  "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III.  Discussion

This matter is subject to dismissal for the following reasons.

### A.  Claim Preclusion - Disciplinary Action and Segregation

Plaintiff's claims in this lawsuit arise from two sets of occurrences.  Both have formed the basis of previous lawsuits filed by Plaintiff in this Court.  First, Plaintiff alleges that he was charged with six disciplinary infractions and "was not afforded his protected right to be faced by his accusers" or "his right to be heard to present a defense in a meaningful manner."  (Doc. 12, at 6.) EDCF Disciplinary Officers Randolph and Johnson allegedly falsified the dispositions of hearings on the infractions, stating hearings were held when they were not.  Plaintiff further alleges that Officer Chiles falsified a report used to keep him in segregation.  Then, Plaintiff alleges that grievances he filed based on the disciplinary actions and segregation were not properly investigated.

Plaintiff based his complaint in *Blake v. Bos*, Case No. 21-3176, on this same series of events.  The Court summarized Plaintiff's allegations and arguments as follows:

> Plaintiff alleges that at a disciplinary hearing conducted by telephone on August 17, 2020 at 0932 hours, Hearing Officer Randolph repeatedly warned Plaintiff not to assert as a defense that the reporting officer, CSI Hoffarth, was lying. Plaintiff believes Randolph wanted to keep his allegations of illegal conduct on the

part of Hoffarth out of the official record so she would not have to report Hoffarth. Plaintiff claimed camera footage would show that Hoffarth maintained an inappropriate relationship with another inmate and alleged that she wrote Plaintiff's disciplinary report to protect that relationship. When Plaintiff refused to change his testimony, Randolph hung up, thus discontinuing the hearing.

The next day, Randolph continued the hearing in absentia with the justification that Plaintiff made disrespectful comments toward Hoffarth and, after being warned several times, hung up the phone. According to the Complaint, Randolph stated in the hearing record that staff assistance was provided to Plaintiff after he hung up, and Plaintiff was represented by Unit Team Knapp at the continued hearing. Plaintiff denies that he received any staff assistance.

Plaintiff further claims that Randolph documented four other hearings with Plaintiff on August 17, 2020 at 0932 hours. Plaintiff argues that Randolph could not have conducted five hearings with him at the same time. In addition, Plaintiff alleges that Lieutenant Johnson also documented a hearing with Plaintiff on August 17, 2020 at 0932 hours.

Plaintiff asserts that these false reports caused him to be on segregation for over six months for infractions that were false, without any hearings. He argues it is his constitutional right to have a hearing on every disciplinary infraction where he can present a defense and face his accusers.

Also in support of Count I, Plaintiff states that he filed a grievance on the hearing issue. In response, Unit Team Manager Martin moved him to another segregation building. Plaintiff alleges he informed Martin many times that the hearings that had him stuck in segregation were never held. She did nothing to check Plaintiff's account of events. Plaintiff argues this makes her complicit in the violation of his constitutional rights.

Similarly, Plaintiff alleges UTM Hoepner and Classification Administrator Bos were aware of Plaintiff's claims and did nothing to investigate and correct the situation, thus making them complicit as well.

Lastly, Plaintiff claims CDI Chiles wrote a false report stating Plaintiff said he was a threat and capable of causing problems on the compound. According to Plaintiff, this report was used as justification to keep Plaintiff in segregation indefinitely. Plaintiff then describes an incident which is the subject of another of his pending lawsuits (Case No. 21-cv-3046) where he alleges he was forced to go to the hospital.

Memorandum and Order to Show Cause, Doc. 4, *Blake v. Bos*, Case No. 21-3176.

That case was dismissed for failure to state a claim, appealed, and dismissed on appeal for lack of prosecution.  Based on the doctrine of claim preclusion, Plaintiff's claims here arising from these events are barred.

Claim preclusion (also known as res judicata[1]) "prevent[s] a party from litigating a legal claim that was or could have been the subject of a previously issued final judgment."  *Johnson v. Spencer*, 950 F.3d 680, 693 (10th Cir. 2020) (quoting *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1239 (10th Cir. 2017)).  The underlying principle is that "a party who once has had a chance to litigate a claim before an appropriate tribunal usually ought not have another chance to do so."  *Id.* at 708.  For claim preclusion to apply, "three elements must exist: (1) a [final] judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits."  *Id.* (alteration in original).  "[E]ven if these three elements are satisfied, there is an exception to the application of claim preclusion where the party resisting it did not have a 'full and fair opportunity to litigate' the claim in the prior action."  *Id.*

Applying the claim preclusion elements to this case, the first element is met.  This Court screened the complaint in *Blake v. Bos* and issued a show cause order giving Plaintiff the chance to demonstrate why the complaint should not be dismissed.  Plaintiff filed a response, which the Court considered before dismissing the complaint for failure to state a claim.  Plaintiff then filed two motions for reconsideration, both of which were denied.  There was a final judgment on the merits in *Blake v. Bos*.  *See Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1298 (10th Cir. 2014) (explaining the universally held rule that a court's conclusion that the plaintiff fails to state a claim is a judgment on the merits).

---

[1] The Tenth Circuit uses the term "claim preclusion" instead of "res judicata."  *Johnson*, 950 F.3d at 693 n.3.

There is also identity of the parties between the earlier action and this case.  In *Blake v. Bos*, Plaintiff named seven EDCF officials as defendants: Marsha Bos, Classification Administrator; J. Hoepner, Unit Team Manager; (FNU) Martin, Unit Team Manager; A. Randolph, Sergeant, Disciplinary Hearing Officer; A.J. Johnson, Lieutenant, Disciplinary Hearing Officer; (FNU) Knapp, Unit Team Supervisor; and (FNU) Chiles, SORT Officer.  Here, Plaintiff names Bos, along with other supervisory officials at EDCF and the KDOC.  These defendants, as KDOC employees, are in privity with the defendants in *Blake v. Bos.  See Malek v. Brockbrader*, 190 F. App'x 613, 615 (10th Cir. 2006) (citing *United States v. Rogers,* 960 F.2d 1501, 1509 (10th Cir. 1992) ("There is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is res judicata in relitigation of the same issue between that party and another officer of the government.") (internal quotations and citation omitted)).

Finally, the cause of action here and in *Blake v. Bos* is the same.  "[A] cause of action includes all claims or legal theories of recovery that arise from the same transaction, event, or occurrence.  All claims arising out of the transaction must therefore be presented in one suit or be barred from subsequent litigation."  *Muniz v. Moore*, 375 F. App'x 841, 843–44 (10th Cir. 2010) (quoting *Nwosun v. Gen. Mills Rests., Inc.,* 124 F.3d 1255, 1257 (10th Cir. 1997)).  Plaintiff's claims here arise from the same events as the claims he previously asserted in *Blake v. Bos*.

Because the elements of claim preclusion are met, Plaintiff is barred from pursuing claims stemming from the six disciplinary charges and his placement and retention in segregation, as well as the handling of his related grievances.

### B.  Claim Preclusion - Forced Medication

The second series of events from which Plaintiff's claims arise is described by Plaintiff as "forced medication."  Plaintiff alleges that he was forced into a restraint chair and given injections of morphine and fentanyl when he refused to be transferred to a hospital after medical personnel determined that he may have been having a stroke.  These events formed the basis of his claims in *Blake v. Wallace*, Case No. 21-3046, which was also dismissed for failure to state a claim, and Plaintiff's appeal is pending before the Tenth Circuit.

Plaintiff asserts in the present case that Natasha Carter, attorney for the Kansas Department of Corrections ("KDOC"), completed a court-ordered *Martinez* Report in *Wallace* which concluded that Plaintiff was not force-medicated but that "reports uncovered" contradict her conclusion.  Plaintiff goes on to argue that he was medicated against his will and to allege that Ms. Carter violated 18 U.S.C. § 1512(c)(1) by concluding otherwise.

Plaintiff's primary problem with his claim against Carter (and other defendants) is that he is attempting to enforce a criminal statute.  As the Court previously explained, Plaintiff does not have a private right of action to enforce criminal laws.  Further, the Court is not authorized to direct state or federal prosecutorial authorities to bring a criminal case against any of the defendants.  *See State ex rel. Rome v. Fountain*, 678 P.2d 146 (Kan. 1984) ("[A] private individual has no right to prosecute another for crime and no right to control any criminal prosecution when one is instituted. Thus, the philosophy of this state has always been that a criminal prosecution is a state affair and the control of it is in the public prosecutor."); *Maine v. Taylor*, 477 U.S. 131, 136 (1986) ("the United States and its attorneys have the sole power to prosecute criminal cases in federal courts"); *U.S. v. Davis*, 285 F.3d 378, 383 (5th Cir. 2002) (court lacks power to require United States Attorney to sign indictments).

### C.  Claim for Denial of Access to the Courts

Plaintiff also includes a denial of access to the courts claim.  He argues that being unfairly locked in segregation caused him an actual injury by being unable to access the library's computers.  (Doc. 12, at 15.)  He was therefore not able to find materials to fight an appeal in Maryland.  He intended to make a DNA claim of actual innocence, but no one could help him find exceptions to the time bar or get him information on Maryland's version of actual innocence law. (*Id*. at 16-17.)

It appears that this claim arose from his placement in segregation that was at issue in *Bos*. It was a claim that could have been raised in that lawsuit, and therefore Plaintiff is precluded from raising it in the present action.  *Johnson*, 950 F.3d at 693 (claim preclusion prevents a party from litigating a claim that was or *could have been* the subject of a previously issued final judgment).

### D.  Defendant Patricia Smith

Defendant Smith is described by Plaintiff as the Interstate Corrections Coordinator for the State of Maryland.  While the Amended Complaint does not provide an address for Defendant Smith, presumably she resides in Maryland.  Consequently, it appears from the face of the Amended Complaint that the Court lacks personal jurisdiction over Defendant Smith, and she is subject to dismissal from this action.[2]

To exercise personal jurisdiction over a nonresident defendant, the Court must ensure that "the exercise of jurisdiction is sanctioned by the long-arm statute of the forum state," and that the due process requirements of the Constitution are satisfied.  *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.,* 17 F.3d 1302, 1304-05 (10th Cir. 1994).  The Kansas long-arm statute has

---

[2] Under § 1915, the Court may consider personal jurisdiction and venue *sua sponte* "when the defense is obvious from the face of the complaint and no further factual record is required to be developed." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quoting *Fratus v. Deland,* 49 F.3d 673, 674–75 (10th Cir. 1995) (quotations, alterations omitted)).

been interpreted by Kansas courts "to allow jurisdiction to the full extent permitted by due process," such that these inquiries are, for all practical purposes, duplicative. *Id.* at 1305.

The exercise of jurisdiction over a nonresident defendant comports with due process "'so long as there exist minimum contacts between the defendant and the forum State.'" *Trujillo v. Williams*, 465 F.3d 1210, 1217-18 (10th Cir. 2006) (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291 (1980)). For a court to exercise "general" personal jurisdiction over a defendant, he must have continuous and systematic contacts with the forum state. *Arocho v. Lappin*, 461 F. App'x 714, 717 (10th Cir. 2012) (citing *Shrader v. Biddinger,* 633 F.3d 1235, 1239 (10th Cir. 2011) (explaining and contrasting general and specific personal jurisdiction)). The minimum contacts required for "specific" personal jurisdiction may be established where "the defendant has 'purposefully directed' its activities toward the forum jurisdiction and where the underlying action is based upon activities that arise out of or relate to the defendant's contacts with the forum." *Id.* (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985)).

It does not appear that Defendant Smith has the kind of continuous and systematic contacts with Kansas to support the exercise of "general" personal jurisdiction over her. She does not reside in, work in, or have direct control over the operation of any prison facility in the State of Kansas. Nor does it appear Defendant Smith should be subject to the Court's "specific" personal jurisdiction. *See Arocho v. Nafziger,* 367 F. App'x 942, 949–50 (10th Cir. 2010) (following analysis of this condition for specific jurisdiction in *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.,* 514 F.3d 1063, 1071–72 (10th Cir. 2008)). As a result, the Court appears to lack personal jurisdiction over Defendant Smith, and she is subject to dismissal from this action.

### E.  Request for Monetary Damages

Plaintiff's request for monetary damages is barred by 42 U.S.C. § 1997e(e) because Plaintiff has failed to allege a physical injury caused by the alleged deprivations of his constitutional rights.  Section 1997e(e) provides in pertinent part that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).  This provision bars a prisoner from bringing a claim for compensatory damages without a prior showing of a physical injury.  *See Perkins v. Kansas Dept. of Corrections*, 165 F.3d 803, 807 (10th Cir. 1999).  Section 1997e(e) applies regardless of the nature of the underlying substantive violation asserted.  *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001), *cert. denied*, 536 U.S. 904 (2002) (applying §1997e(e) to the plaintiff's First Amendment claim for free exercise of religion).  Plaintiff's request for monetary damages is subject to dismissal as barred by 42 U.S.C. § 1997e(e).

### F.  Claims under 42 U.S.C. § 1985 and § 1986

Plaintiff claims all of the named defendants violated 42 U.S.C. § 1985 and § 1986 by conspiring to violate his civil rights.  (Doc. 12, at 17-18.)

The Court construes the conspiracy claim as being asserted pursuant to 42 U.S.C. § 1985(3), which relates to conspiracies to deprive a person of rights and privileges.  To state a claim for relief under 42 U.S.C. § 1985(3), Plaintiff must allege facts to show: (1) a conspiracy; (2) to deprive the plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting from the conspiracy.  *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971).  The Tenth Circuit has clarified that § 1985(3) "does not 'apply to all tortious, conspiratorial interferences with the rights of others,' but

rather, only to conspiracies motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'"    *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (quoting *Griffin*, 403 U.S. at 102).  Plaintiff does not allege that he has been subjected to any class-based invidiously discriminatory animus.  Therefore, he fails to show an entitlement to relief under § 1985.

Further, a claim under § 1986 is a claim against a person who has knowledge of a conspiracy under § 1985.  42 U.S.C. § 1986 ("Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured ....").  Because Plaintiff has not adequately alleged a claim pursuant to 42 U.S.C. § 1985, he has also failed to adequately allege a claim pursuant to § 1986.

### G.  Claim for Violation of KDOC Policies and Procedures

Plaintiff continues to assert that the defendants violated KDOC internal procedures and state regulations by failing to respond to his grievances.  (Doc. 12, at 18-19.)   As explained in the MOSC, such claims are not actionable under § 1983.  The Tenth Circuit has held that there is no independent constitutional right to state administrative grievance procedures and that the voluntary provision of an administrative grievance process does not create a liberty interest in that process. *Burnett v. Allbaugh*, 715 F. App'x 848, 852 (10th Cir. 2017); *Von Hallcy v. Clements*, 519 F. App'x 521, 523-24 (10th Cir. 2013); *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011); *see also Redick v. Coy*, 2022 WL 1026892 *3 (D. Kan. Apr. 6, 2022).  In addition, an alleged violation of Kansas regulations or the inmate rule book is not a deprivation of a federal right for which recovery is possible under § 1983. *See West v. Atkins,* 487 U.S. 42, 48 (1988) ("To state a

claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States").

### H.  Claim for Retaliation

Plaintiff alleges that the defendants have retaliated against him.  He lays out a "Retaliation Time Table" in the Amended Complaint (*see* Doc. 12, at 23-28) and argues that a retaliation claim can be based on the filing of a false disciplinary report resulting in segregation time.

"Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his 'constitutional rights.'"  *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990); *Penrod v. Zavaras*, 94 F.3d 1399, 1404 (10th Cir. 1996).  "Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct."  *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

Plaintiff's timetable starts with the following entry: "Sgt Randolph confronts plaintiff about Warden Snyder, a [defendant] in unrelated suit about authored book banned."  (Doc. 12, at 23.)  The entry is demonstrative of a problem with Plaintiff's claim as a whole; it does not include dates, it does not adequately explain the constitutionally protected activity, and it does not include specific facts to show a retaliatory motive.  An "inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights."  *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) (quotations and citations omitted); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)).  Thus, for this type of claim, "it is imperative that

plaintiff's pleading be factual and not conclusory.  Mere allegations of constitutional retaliation

will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990) (plaintiffs must allege

specific facts showing retaliation because of the exercise of the prisoner's constitutional rights.").

To prevail, a prisoner must show that the challenged actions would not have occurred "but for" a

retaliatory motive.  *Baughman v. Saffle*, 24 F. App'x 845, 848 (10th Cir. 2001) (citing *Maschner*,

899 F.2d at 949–50; *Peterson*, 149 F.3d at 1144)); *see also Jones v. Greninger*, 188 F.3d 322, 325

(5th Cir. 1999) ("[T]he inmate must allege more than his personal belief that he is the victim of

retaliation.").

Plaintiff's retaliation claim is subject to dismissal for failure to state an actionable claim.

However, Plaintiff is given an opportunity to file a second amended complaint.  Plaintiff may want

to consider focusing on his retaliation claim and including sufficient specific support for the claim.

## IV. Response and/or Amended Complaint Required

Plaintiff is required to show good cause why his Amended Complaint should not be

dismissed for the reasons stated herein.  Plaintiff is also given the opportunity to file a complete

and proper second amended complaint upon court-approved forms that cures all the deficiencies

discussed herein.[3]  Plaintiff is given time to file a complete and proper amended complaint in

which he (1) raises only properly joined claims and defendants; (2) alleges sufficient facts to state

a claim for a federal constitutional violation and show a cause of action in federal court; and (3)

---

[3] To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint.  *See* Fed. R. Civ. P. 15.  An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it.  Therefore, any claims or allegations not included in the amended complaint are no longer before the court.  It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint.  Plaintiff must write the number of this case (23-3176-JWL) at the top of the first page of his amended complaint, and he must name every defendant in the caption of the amended complaint. *See* Fed. R. Civ. P. 10(a).  Plaintiff should also refer to each defendant again in the body of the amended complaint, where he must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances.  Plaintiff must allege sufficient additional facts to show a federal constitutional violation.

alleges sufficient facts to show personal participation by each named defendant.

If Plaintiff does not file a second amended complaint within the prescribed time that cures all the deficiencies discussed herein, this matter will be decided based upon the current deficient Amended Complaint and may be dismissed without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED** that Plaintiff is granted to and including **January 3, 2024**, in which to show good cause, in writing, why his Amended Complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff is also granted until **January 3, 2024**, in which to file a complete and proper second amended complaint to cure all the deficiencies discussed herein.

The Clerk is directed to send § 1983 forms and instructions to Plaintiff.


**IT IS SO ORDERED.**


**Dated November 30, 2023, in Kansas City, Kansas.**


**S/  John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**